This is an appeal number 05-1612 Dentsply Intl v. HU-Friedy MFG Good morning. Welcome. Please proceed Ms. Mullin. Thank you, Your Honor. May it please the Court, the District Court has ruled in favor of the Court here made two fundamental errors. The first was in importing an extraneous limitation into the definition of the term TIP, so that it limited that definition to a preferred embodiment. The second was in its application of the Doctrine of Equivalence, or perhaps more perfectly, it's better to apply the Doctrine of Equivalence. Let me ask you something about your brief. I'd like to direct your attention to page 40 of your brief, blue brief. At the bottom of page 40 is a quotation that purports to characterize a finding, a critical finding by the District Judge. And in the final line at the bottom of 40 are three dots indicating an omission of some language. Do you see that? Yes, Your Honor. Now, as I understand it, the method claims required that before drilling the solid metal TIP piece had to be bent. That's correct.  If the sequence was reversed, it wouldn't infringe. Isn't that right? This is not a case where the sequence is reversed. It has nothing to do with whether the TIP is bent or not. Well, as I read the claims, they require that before the drilling commences, the bending must conclude. Therefore, if the sequence of drilling and bending is reversed, the claim limitation wouldn't be met, and therefore there couldn't be any infringement. Isn't that correct? That may be correct, but the truth is not. Here's the problem I have with your ellipses at page 40 of your brief. What it leaves out is the sequence of drilling versus bending that was in the judge's finding. And what he found was that there was drilling before the bending, which would take it out of the scope of the claim, and this truncated quote completely masks the heart and soul of the judge's finding. And it suggests that the finding was the opposite of what it really was. It looked to me like it's exceedingly misleading. The district court finding you're referring to is number 16, and it actually refers to two bending steps, because the Hugh Freedie process includes two bending steps. One of them does occur before the drilling. What happens in the Hugh Freedie process is they have a tip region. I understand that, but the way the claim reads looks to me like it requires that the bending to get the location of what I'll call the port has to occur before the drilling starts, and that's not true in the accused product. I agree with you as to what the claim requires, but it is true in the accused product. And if you look at the beginning of finding number 16 by the district court judge, he refers to the tip region of the Hugh Freedie design as formed by bending, that's the first bending, the shaft at midpoint, drilling a fluid inlet slot into the side of the connecting body, and also drilling a fluid passageway from the bend going back to the fluid inlet slot. And then there is a second bending step. So in the Hugh Freedie process, there is a bending of the tip region that occurs before any drilling occurs. It's just that the process includes two bending steps. Some of the claims that issue here include that second bending step. Claim 2 and Claims 8 and 9, for example, talk about the second bending step. Claims 1 and 7 are limited to just the first initial bend, which is bending the tip and then drilling at the area of the bend so that you create the discharge orifice at the area of the bend. And then as recited in the end of Claim 2 and also in Claims 8 and 9, there can then be a second bending to put the tip into a shape for its final use. The first bending is a bending actually in a different direction than how the tool is shaped when it's being used to clean teeth. And the importance of the bend is in the ability to control the length of the discharge orifice that's formed, and that's controlled by the radius of the bend. So when you pre-bend the tip, when you bend it before you drill, you are able to increase the strength of the tip by minimizing the amount of material that you remove and also create an opening that is shaped in a way that controls the spray of fluid coming out of it. Now, as I recall, the claims also required that to be within the scope of the claims method, the tip had to be a solid metal piece. Some of the claims do refer to the tip as a solid metal tip, correct. And as I recall, in the case of the accused tip, it doesn't start out as a solid metal tip. It's already been pre-drilled in part. So by definition, it's not solid. It actually is a solid tip. It's not pre-drilling that happens. It's a turning process to pre-form it. So if you think of the tip of an insert like the end of my pen... Stick with me on the simple geometry of solid versus not solid. I understood the claim to require that the metal piece comprising the tip be solid. If it's not solid, it's not a claim limitation not met. That would be correct, Your Honor, but the Hugh Freedy tip is solid. It's just that it starts out as a piece of metal that has a constant diameter. And through an initial pre-forming process or returning process, they take the end of it and they take... It is still a solid metal tip. That's an undisputed fact. All right. So the district court's decision, actually, with respect to infringement is that although none of the assertive claims here, and they're all method claims, include a step relating to attaching a separate tip to the connecting body, that the Hugh Freedy process cannot infringe because it doesn't include this undecided step. And this comes out of the district court's... This comes down to whether or not the tip's a separate attachment, doesn't it? It comes down... In looking at the specification, it is replete with references to the separateness of the 50s, a particularly good one. It says it is the object of the invention that the tip is attached. And, of course, attaching the tip means that it must be separate in order to go through the attaching process. Doesn't the specification support the district judge's reading? The specification actually includes alternating descriptions of the tip. And some of the alternating descriptions, it does refer to the tip as being axially attached to the connecting body. But it is also replete with references to simply talking about the tip. And it only says... But when you say it is the object of the invention that the tip is attached, and I am afraid engaging in Judge Michelle's sin here. I'm taking a lot out of the internal of that quote. But it's part of that quote that it is the object of the invention to have an attachable tip, meaning it's separate. How do we get around that to support your reading? That is only one of the recited objects of the invention. If you look, for example, at column 2 beginning at line 35, in this language probably most closely approximates claim 1, which is being asserted here. It simply states that it's an object of the invention to provide a method of making an insert for an ultrasonically activated tooth cleaning tool comprising bending a solid metal tip to form a bend in the location for an opening of a passageway, then drilling the passageway through the solid metal tip to form a tip having a passageway having an opening at the bend. There is no reference there to it being separate. And the only place in the specification that talks about what the tip must be occurs in column 2. And the only thing that it says the tip must be is generally small and cross-sectioned and shaped so that it can access between the teeth and gums. Those are the only things that the tip must be. How can it be a region, as you say, looking now at the claim language, the tip is the end region, if it's modified by things like distal tip, tool tip, pointed tip, those seem to suggest, and then you have a fluid outlet end and an inlet end suggesting that there's an end to the tip on the tool side of the entire configuration, meaning that it is an attachable tip. The language of the claim seems to support the district judge again. If you take these two pens as a simple example, one of them has a tapered elongated region on the end, which is separable, and unscrew the end of this. This also has a tapered elongated region on the end, but I can't take it off. But you and your claims are talking about the kind you take off all the time, because it has an inlet end, that's the, no, that would be the other one, it would have to be the tip is the one that has the inlet end, right? And if there's a second end in this configuration, there's one end, that's the fluid outlet end, as you describe it in your claim, and then it says there's an inlet end, meaning there has to be an end on the other side as well, it's an attachment. Well, having an end doesn't necessarily require that it be an attachment. The point I take it is it requires that it be attachable and separate, because it has to have two ends. If it's already attached to something, it only has one end, not the required two ends. My finger has a distal end and a proximal end, yet it's attached to my hand. Well, how can you drill this thing if it's part of the connecting body, as opposed to it being a separate solid metal piece that you bend and drill? Just as a practical matter, how can you do it if it's already integrated with the upstream mechanism that's referred to as the connecting body? In a manner that's similar to what's described and shown actually in connection with figure one, which is simply that you start out with your, you say this is the connecting body, this is the tip of the insert. You first bend your insert, and then you drill. And you go through the tip to a place in the connecting body where a slot or there's been a radial boring put in that area so that fluid can flow from around the connecting body and into the fluid passageway. And I haven't done the second step, which is the second bend of the tip to make it into a shape that can be used. Yeah, but there's no more drilling at that point, so. That's correct. All right, anything further? I would like to reserve the rest of my time. Very well, thank you very much. Mr. Rice, you have the floor. Thank you, Your Honor. May it please the Court. I would like to address first the construction of the tip. Our primary position is you have to define the term tip in the same manner that the applicant used the term in the specification. Of course, as this Court knows, the specification is the single best guide to claim meaning. It's usually dispositive. This case is no exception to that rule. Both parties agree that the term tip is not a term of art here, so the answer is in the figure 3, which I'll hold up. This entire structure is what the applicant defined as tip. Sure, but that's a preferred embodiment. So the question is whether the claim means only when it says tip what figure 3 shows, or figure 3 is a subset of the species of the genus of tip. That's the issue in the case. The fact that this diagram dramatically shows a separate piece doesn't prove the point. It's supportive of the point, but it doesn't prove the point. That's right, Your Honor. I'll explain further. First of all, the first point is it's not a preferred embodiment because the tip is not described as an attachment in simply one embodiment or two embodiments. It's described that way in every embodiment. The specification discusses many, many embodiments for the tip. It talks about tips in different sizes, shapes, made of different materials, milled in different ways. All of those are consistent with the tip as a separate attachment to a connecting body. Moreover, the specification goes further and talks about ways to attach the tip to the connecting body. It talks about brazing, welding, press fitting, screws. All of this reflects that when the applicant said tip, what he meant was an attachment to a connecting body. Why isn't it equally consistent with an interpretation that there are two kinds of tips? There are attached tips and non-attached tips. In the case of a non-attached tip, you'd have to weld it or braze it or solder it or glue it or something. For that category, they show you how you do that. That doesn't mean there isn't another category as a matter of logic, I don't think. That's right, Warren. However, the applicant nowhere in the specification talks about an alternative embodiment where the so-called tip is a part of a larger object, nor do they describe the tip as a tip region or end region. They say tip. That word has a meaning. It refers to a specific structure. If you look at the specification and the description of that structure, which is most clearly illustrated in Figure 3 where the patentee says this is tip 20 that I'm referring to. Elsewhere in the spec it says tip 20 is a key element of the invention. You look to see what it is that's being described. What you see is a structure that includes not only a taper and a tooth cleaning area, but it includes a shank. The shank is for connecting this attachment to the connecting body. And you can go beyond Figure 3. There's no question that the figures and the descriptions are supportive of your argument, but it seems to me that you have to go a little bit further. You have to say that a preattached tip slash connecting body can't fit within the claim language. Well, I think we can do that, Your Honor. Again, these are method claims. They claim a method of performing certain manufacturing steps on a specific structure, which the patentee called tip. He put the term tip in the claim as the key structure. Yeah, but he says, doesn't he say comprising a tip, which would suggest that it doesn't exclude an attached connecting body, I guess the term is. Wouldn't it? The connecting body is not claimed. No, I understand that. But when you say comprising a method of making a dental tool comprising a tip and then various other steps of what happens in terms of drilling and bending and so on, doesn't the use of the word comprising preceding the word tip suggest that as long as it has the tip, if it has something else connected to the tip, that wouldn't necessarily take it outside the confines of the claim? No, I don't think that's correct, Your Honor. I think the term comprising refers to the fact that the insert, which is in the preamble, in which, by the way, Densply has never argued that that's a limitation of the claim, that's the preamble, that the insert comprises a tip. The insert as described in the specification clearly is not limited to the tip. It also has a connecting body, and it also has another piece, the electromagnetic step. So the word comprising precedes insert, not tip? The term comprising modifies insert. The preamble says this is for use in an insert, which includes but is not limited to a tip. And as Judge Rader has pointed out, one of the objects of the invention is a tip that's attached to the connecting body. Everything in the specification reflects the applicant's intent or the use of the term tip. Our position is it's not a preferred embodiment, not only because all of the embodiments are consistent with our definition. I suppose you would argue that if we construed it otherwise than as seems suggested by the specification, that competitors of the patentee would have no way to know, not clearly on warning, not enough public notice function of the claims if they're going to have some undefined broader scope. That's exactly right, Your Honor. It's that zone of uncertainty that would remain if you said that tip can be any kind of end piece. There's nothing in the spec to suggest that, and there's no way the public would be on notice as to what this tip is or where it begins or ends. Was written description, adequacy of written description and enablement in this patent litigated below? No, it was not, Your Honor. So the claim construction was done wholly separate from any assessment of enablement. That's correct, Your Honor. There were no enablement arguments raised. Some people may be wondering whether that's such a great idea. I mean, no, in general. We've said first you do claim construction and then later you worry about infringement and validity and even enforceability. But maybe so antiseptic a separation doesn't always serve well if in order to preserve validity, a narrower construction of some key claim terms would plainly be needed. Just an irrelevant editorial comment. No need for you to respond. Thank you, Your Honor. I'd also like to address the issue of the doctrine of equivalence. That's the next most important issue. As I said before, the tip is a structural limitation that the applicant inserted into the claim. There's no dispute that it's a limitation. The question is whether it can be met by an equivalent. But the tip is a structure that's missing entirely in the Hugh Friede connecting body. We have a one-piece connecting body with no attachment whatsoever. And there's no structure that corresponds to or functions as an attachment. But isn't that always true, the doctrine of equivalence? The problem with the vitiation argument that you're giving me now, and clearly haven't thought through very well, is that it's internally inconsistent with the doctrine of equivalent itself, isn't it? You're always missing a limitation in the doctrine of equivalence. It's just that sometimes we say it matters and sometimes we say it doesn't. And we have no principle for discerning between the two, do we? Well, this Court has provided a totality of circumstances test. Which is not a test. It's simply a weigh all the facts. Wouldn't you be better sticking with a function way result test, something that gives you a little more anchorage than vitiation? I know the Supreme Court wrote it in at the same time this Court realized it never worked. But that's another story. Yes, Your Honor. Actually, whether one applies the vitiation test or the function way result test or the substantial differences test, the result is the same here. Because the Court made fact findings. The Court went beyond the all elements rule here. We argue that as a first line of argument. Because we feel that under the vitiation factors as stated in the Freedman and Sage cases, we fit perfectly under those factors because this is a simple mechanical device. The claim is simple. It's not complex. And it was very foreseeable what these variations were. Because, in fact, Hugh Freed has always used this single one piece connecting body. The parties have been competitors from before the time that the patent issued. And there's no question that this was out there unforeseeable. So under the all elements rule test, we think the argument is strong. But you don't have to stop there because the Court didn't stop there. The District Court. The District Court had a full bench trial on the merits. It heard all the evidence. It heard the experts. It looked at physical evidence. And it made some detailed fact findings, including the finding that a SIF attachment is properly defined, is substantially different from the so-called tip region on a one piece connecting body. The Court found that, among other things, as Judge Michel suggested, it's substantially more difficult to create the passageway to drill into a one piece attachment than it is, I'm sorry, a one piece connecting body than a separate attachment. What about Ms. Mullen's illustration using her forearm and wrist? The illustration. Why doesn't that solve the apparent problem in doing the drilling? Because of the angles, basically, of the drilling. You can't, if you have a separate attachment, you've got a much smaller space. The passageway we're talking about is a very fine tunnel that's being drilled through a very small piece. And the way to do it with the tip and what the patent discloses, describes, is drilling, is bending the tip, drilling through the back end where you can get a good angle. And angles are very important here. You get a certain angle on the tip. You can shoot in directly from behind. Whereas when you have this full connecting body, you can't using the pen rather than a forearm. If you can drill directly from the back, you get essentially a 90 degree angle into the tip. I gather that the District Court didn't really reject the concept that what was achieved was the same angles or sufficiently close so that the function was the same, whether the tip, whether it was separate, whether the tip was drilled separately or whether it was drilled as part of the larger assembly. Is that incorrect? It's slightly incorrect, Your Honor. I think what the District Court said was the insert, when you finish with the product, at the end of the day they both have a similar tooth cleaning function. But if you focus on the aspect of the invention that's claimed, that is substantially different. So you're focusing on the fact that it's a method claim rather than a product in terms of equivalency? No, Your Honor. We're focusing on the fact that the limitation that's at issue here is a structural limitation within a method claim. The applicant claimed a method for performing certain manufacturing steps on this specific structure, which is absent in the accused product. That's why I asked about the method claim as opposed to the accused product, where one might more readily say that it's equivalent to have the identical or substantially identical product made in two pieces rather than one. Whereas if you were concentrating on the method, which claim one is, I gather, a method claim, that you would have a stronger argument as to why there would not be equivalency. And, of course, the district judge so found. Right. I think there's two issues, Your Honor. One is whether the structural limitation is met. And then the others are whether the method steps are met. And our position is in the first instance, as an initial matter, you have to determine whether you're practicing the claimed steps on the claim structured in the first instance. I'm looking at the equivalency issue now only. And the equivalency issue also primarily goes to that structural limitation, whether there's an equivalent to the structural limitation in the first instance. But the district court also found that there were differences, that the tip is not made in the same way and does not function in the same way as the so-called tip region. And among those findings were findings that the drilling process can be substantially different, much easier with a separate tip, more difficult with the one piece. And he also identified a number of other ways in which the manufacturing steps have to be changed substantially in order to accommodate the accused product as opposed to the client tip. Maybe your strongest argument is not clearly erroneous. Maybe not right, but not clearly erroneous. That's certainly an argument we assert here, because the Dunn Supply has not attacked the fact findings of the district court as clear error. It's not made this argument in its briefs. For the purposes of the appeal, those fact findings are fixed. So the court, I think, has to accept the fact findings as an appellate court. And the fact finding, the key fact finding is that the tip, the claimed tip, and the so-called tip region are not equivalent. They're not manufactured the same way, and they have a substantially different function. All right. Thank you, Mr. Rice. Ms. Mullen, you have a minute and a half if you need it. Or you may have up to a minute and a half, is maybe what I should say. Thank you, Your Honor. Just to clarify, the Claim 1 is directed to a method for making an ultrasonic insert comprising, and then you have your steps, which include a tip and obviously can include other elements. With respect to the foreseeability and the way of claiming this process that would encompass both the separate and integral tip, we think that's what was done here. And if we added any limitations to it, if we said, for example, a method of making an ultrasonic insert comprising the step of bending a tip that is integral to the connecting body, then that would actually narrow the scope of the claim. So to the extent that Mr. Rice has argued foreseeability, and it was foreseeable, it has been captured by the language used in the claims, because the claims simply refer to the term tip. There is also no limitation. I would translate that argument to be, since we should win on literal infringement, it doesn't make any difference about equivalent infringement. That is correct. This court vacates the claim construction of the term tip. Well, why didn't you appeal the grant of summary judgment of no literal infringement when it was granted? There was no summary judgment of no literal infringement. We stipulated that under the court's claim construction, we cannot prevail on a theory of no literal infringement after the court has granted summary judgment. But I thought based on your stipulation, the district judge granted summary judgment of no infringement. He entered judgment on those claims, correct. But why didn't you appeal at that point on the grounds that the judgment rested on a faulty claim construction? Because we still had an argument that there was infringement under the doctrine of equivalence. Well, I understand that. But you could have gone ahead to litigate at the bench trial, as you did, equivalent infringement, and still have filed a timely appeal from the entry of judgment as to literal infringement. And your primary doctrine of equivalence argument seems to turn on the literal infringement argument anyway, as our chief judge pointed out. We did preserve the right to appeal the literal infringement argument as part of that stipulation. It was not believed to be timely until after all of the issues in the case were adjudicated. At that point, we did not have a full determination on the issue of infringement. It was only a partial determination. And this court has in the past refused to take those kinds of appeals because it's not an appeal as a matter of right. It would be discretionary. No, that's quite right. You would have to get a 54B certification to split the two types of infringement apart. I was just curious about why that wasn't done. But in the final analysis, it doesn't matter. All right. Well, we thank both counsel. We'll take the case under advisement. The Honorable Court is adjourned until 2 o'clock this afternoon.